IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

PAUL WILSON,

    Petitioner,

vs.                No. 10-2796-STA-cgc

MICHAEL DONAHUE,

    Respondent.

ORDER TO MODIFY THE DOCKET
ORDER ON PENDING MOTIONS
ORDER DENYING PETITION PURSUANT TO 28 U.S.C. § 2254
ORDER DENYING CERTIFICATE OF APPEALABILITY
ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH
AND
ORDER DENYING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL

Before the Court is the *pro se* Petition Under 28 U.S.C. 2254 for Writ of Habeas Corpus by a Person in State Custody (the "Petition") filed by Petitioner Paul Wilson, Tennessee Department of Correction prisoner number 109993, who is currently an inmate at the Hardeman County Correctional Facility ("HCCF") in Whiteville, Tennessee (ECF No. 1),[1] Petitioner's Request to Determine Disposition of Case and Appointment of Counsel (ECF No. 22), and Respondent's Motion to Construe Answer as Motion for Summary Judgment (ECF No. 23). For the reasons stated below, the Court

---

[1] The Clerk is directed to substitute HCCF Warden Michael Donahue as respondent in this matter and to terminate Stephen Dotson, the previous respondent, as a party to this action. *See* Fed. R. Civ. P. 25(d).

GRANTS the Request for Disposition of Case and DENIES the motion for appointment of counsel, the Motion to Construe Answer as Motion for Summary Judgment, and the Petition.

I.        **BACKGROUND**

   A.   **State Court Procedural History**

On March 18, 2004, a grand jury in Shelby County, Tennessee, returned a single-count indicting charging Wilson with the aggravated robbery of William Koening on June 12, 2003.[2] On July 12, 2004, the State made a plea offer of fifteen (15) years to settle the instant case and another matter that Wilson had pending, but the trial judge ultimately declined to accept a guilty plea because of Wilson's conduct at the hearing.[3] A jury trial commenced in the Shelby County Criminal Court on December 6, 2004, and, on December 8, 2004, the jury returned a guilty verdict on the sole count of the indictment.[4] At a sentencing hearing on January 3, 2005, Wilson was sentenced to a term of imprisonment of thirty (30) years as a career offender at 60%.[5] A hearing on Petitioner's motion for a new trial occurred on January 15, 2005.[6] The Tennessee

---

[2]    Indictment, <u>State v. Wilson</u>, No. 04 01773 (Shelby Cnty. Crim. Ct.), ECF No. 18-1 at PageID 155-56.

[3]    07/12/2004 Tr. 73-80, <u>id.</u>, ECF No. 18-2 at PageID 265-72.

[4]    Trial Tr. 159-62, <u>id.</u>, ECF No. 18-3 at PageID 434-36.

[5]    Sentencing Hr'g Tr. 28-29, <u>id.</u>, ECF No. 18-4 at PageID 468-69.

[6]    Mot. for J. of Acquittal or in the Alternative, a Mot. for a New Trial, <u>id.</u>, ECF No. 18-1 at PageID 185-86; Order Overruing Mot. for New Trial, <u>id.</u>, ECF No. 18-1 at PageID 187; Mot. for New Trial Hr'g Tr., <u>id.</u>, ECF No. 18-5.

Court of Criminal Appeals affirmed. <u>State v. Wilson</u>, No. W2005-00307-CCA-R3-CD, 2005 WL 3533339 (Tenn. Crim. App. Dec. 22, 2005), *appeal denied* (Tenn. Apr. 24, 2006).

On August 4, 2005, Wilson filed a petition for a writ of habeas corpus pursuant to Tennessee Code Annotated §§ 29-21-101 *et seq.*, in the Circuit Court for Hardeman County, Tennessee, which challenged certain judgments that were used to enhance his sentence.[7] On September 19, 2005, the Warden filed a motion to dismiss the petition.[8] In an order issued on September 19, 2008, the trial court denied the petition.[9] The Tennessee Court of Criminal Appeals affirmed. <u>Wilson v. Dotson</u>, No. W2005-02317-CCA-R3-HC, 2006 WL 1205636 (Tenn. Crim. App. May 4, 2006), *appeal denied* (Tenn. Sept. 25, 2006).

On November 9, 2006, Wilson filed a *pro se* petition in the Shelby County Criminal Court pursuant to the Tennessee Post-Conviction Procedure Act, Tenn. Code Ann. §§ 40-30-101 through -122.[10] Counsel was appointed to represent Wilson,[11] and an amended

---

[7]    Pet. for Writ of Habeas Corpus Relief — State, <u>Wilson v. Dotson</u>, No. 05-02-0070 (Hardeman Cnty. Circuit Ct.), ECF No. 18-28 at PageID 1614-27.

[8]    Mot. to Dismiss Pet. for Writ of Habeas Corpus, <u>id.</u>, ECF No. 18-28 at PageID 1639-50.

[9]    Order, <u>id.</u>, ECF No. 18-28 at PageID 1651-52.

[10]    Pet. for Post-Conviction Relief, <u>Wilson v. State</u>, No. 04 01773 (Shelby Cnty. Crim. Ct.), ECF No. 18-14 at PageID 646-59.

[11]    Order Appointing Private Counsel to Represent Indigent Pet'r, <u>id.</u>, ECF No. 18-14 at PageID 679.

petition was filed on August 31, 2007.[12] The State answered the amended petition on or about September 19, 2007.[13] On August 7, 2008, post-conviction counsel filed a second amended petition.[14] The post-conviction court conducted hearings on July 17, 2008;[15] August 1, 2008;[16] and August 29, 2008.[17] The post-conviction court denied the petition on December 16, 2008,[18] and the Tennessee Court of Criminal Appeals affirmed, <u>Wilson v. State</u>, No. W2009-00173-CCA-R3-PC, 2010 WL 2384895 (Tenn. Crim. App. June 14, 2010), *appeal denied* (Tenn. Sept. 23, 2010).

The Tennessee Court of Criminal Appeals summarized the evidence introduced at trial and the relevant procedural issues:

> The evidence presented at trial showed that the defendant entered a Circle K convenience store on the evening of June 12, 2003, and requested two quarters in exchange for fifty pennies from the store clerk, William Koenig. Koenig, the victim, complied and the defendant left the store. Approximately fifteen minutes later, the defendant returned to the store and requested change for

---

[12]   Am. Pet. for Post-Conviction Relief, <u>id.</u>, ECF No. 18-14 at PageID 680-81, 677.

[13]    State's Resp. to Pet. for Post-Conviction Relief, <u>id.</u>, ECF No. 18-14 at PageID 682-83.

[14]   2d Am. Pet. for Post-Conviction Relief, <u>id.</u>, ECF No. 18-14 at PageID 696-700.

[15]   07/17/2008 Pet. for Post Conviction Relief Hr'g Tr., <u>id.</u>, ECF No. 18-15.

[16]   08/01/2008 Pet. for Post Conviction Relief Hr'g Tr., <u>id.</u>, ECF No. 18-16.

[17]   08/29/2008 Pet. for Post Conviction Relief Hr'g Tr., <u>id.</u>, ECF No. 18-17.

[18]   Findings of Fact & Conclusions of Law on Pet. for Post-Conviction Relief, <u>id.</u>, ECF No. 18-14 at PageID 741-55.

one of the quarters previously given to him. As the victim prepared to give the defendant change for the quarter, the defendant pulled an object out from under his shirt that appeared to be a gun, wrapped in a cloth. The defendant told him, "[D]on't make me shoot you" and "Give me all the money." The victim gave the defendant all the money in the drawer, but the defendant inquired about "20's under the drawer." When the victim told the defendant "there aren't any [,]" the defendant reached over the counter, lifted the drawer, and checked himself. The defendant ordered the victim to the ground and left the store. After waiting to make sure the defendant was gone, the victim called 911.

The victim gave the 911 operator a detailed description of both the defendant and his vehicle. He described the defendant as a black male wearing a white cap, a blue shirt and driving a Cadillac with heavy damage to the side. Later that evening, Memphis police officers spotted a car and driver matching the description given by the victim and stopped the vehicle. Right before the officers stopped the vehicle, one of the officers saw the defendant toss an object out of the car window. However, the object was never found. The officers arrested the defendant and found a white towel and hat in his car, as well as twenty four dollars on the defendant's person. The officers returned to the scene of the robbery with the defendant, and the victim identified the defendant as the individual who robbed him.

A public defender was assigned to the defendant as his counsel and immediately began working on a plea bargain for the defendant. As a result, the defendant was offered a plea bargain of fifteen years. However, over the course of the guilty plea hearing, the defendant told the trial court that he would not be taking the plea if he could afford a lawyer of his own choosing. The defendant also repeatedly interrupted, talked over, and argued with the trial court. Because of the defendant's rude behavior, the trial court held the defendant in contempt. The trial court also refused to accept the defendant's plea, finding that he had told several untruths and was only pleading guilty so he could "file a post[-] conviction [petition] saying the judge forced me to plead guilty because my lawyer wasn't any good."

The case went to trial. During the state's closing argument, the defendant began to comment on the

5

prosecutor's reference to a gun barrel seen by the victim. The defendant repeatedly stated "I did not have a gun" and "You [sic] going to charge me with aggravated robbery, give me 30 years and I didn't have a gun." After the defendant's disruptive behavior, the trial court removed the defendant from the courtroom and gave the jury a curative instruction. The trial court instructed the jury that it must disregard the defendant's unsworn statements in deciding the case. The trial court also questioned each juror with regard to whether he or she could decide the case on the proof without regard to the defendant's outburst. Each juror answered in the affirmative, and both parties proceeded with closing arguments. The jury found the defendant guilty of aggravated robbery.

State v. Wilson, 2005 WL 353339, at *1-2.

## B.   Procedural History of Wilson's § 2254 Petition

On November 4, 2010, Wilson filed his *pro se* Petition, accompanied by a motion seeking leave to proceed *in forma pauperis*. (ECF Nos. 1 & 2.) In an order issued on November 8, 2010, the Court denied leave to proceed *in forma pauperis* (ECF No. 3), and Petitioner paid the habeas filing fee on December 1, 2010 (ECF No. 4). The Court issued an order on January 4, 2011, directing Petitioner to sign his petitions under penalty of perjury within thirty (30) days. (ECF No. 5.) On February 3, 2011, Petitioner filed a response to the Court's order that attached a Perjury Oath and Notary swearing to the truth of the information contained in the Petition. (ECF No. 7.) The Court issued an order on May 24, 2011, directing Respondent to file the state-court record and a response to the Petition. (ECF No. 8.)

6

On August 30, 2011, Respondent filed his Answer to Petition for Writ of Habeas Corpus (ECF No. 17) and the state-court record (ECF No. 18). On September 7, 2011, Respondent filed a notice that two recordings "shall be" manually filed. (ECF No. 19.)[19] On September 15, 2011, Wilson filed his Reply Memorandum of Law in Support of Writ of Habeas Corpus ("Reply"). (ECF No. 20.)

On November 5, 2012, Wilson filed a Request to Determine Disposition of Case and Appointment of Counsel. (ECF No. 22.) For good cause shown, the motion for the status of the case is GRANTED. The status of the matter is stated in this order.

"The constitutional right to counsel in criminal proceedings provided by the Sixth Amendment does not apply to an application for writ of habeas corpus, which is a civil proceeding." Staple v. Lafler, No. 07-cv-12452, 2010 WL 3341530, at *2 (E.D. Mich. Aug. 24, 2010) (citing Cobas v. Burgess, 306 F.3d 441, 444 (6th Cir. 2002)); see also Hoggard v. Purkett, 29 F.3d 469, 471 (8th Cir. 1994) (same, collecting cases). There is no constitutional right to the appointment of counsel in civil cases, and the Court has broad discretion in determining whether counsel should be appointed. Childs v. Pellegrin, 822 F.2d 1382, 1384 (6th Cir. 1987). "The decision to appoint counsel for a federal habeas petitioner is within the discretion of the court and is required only where the interests of justice or due process so require." Mira v. Marshall,

---

[19]   As discussed infra, the manual exhibits were not filed at that time.

7

806 F.2d 636, 638 (6th Cir. 1986); *see also* 18 U.S.C. §
3006A(a)(2)(B) (counsel may be appointed for persons seeking relief
under 28 U.S.C. § 2254 who are financially eligible whenever the
court determines "that the interests of justice so require"). The
appointment of counsel is mandatory only when an evidentiary
hearing is required. Rule 8(c), Rules Governing Section 2254 Cases
in the United States District Courts ("§ 2254 Rules") ("If an
evidentiary hearing is warranted, the judge must appoint an
attorney to represent a petitioner who qualifies to have counsel
appointed under 18 U.S.C. § 3006A.").

> In exercising its discretion, the district court should
> consider the legal complexity of the case, the factual
> complexity of the case, and the petitioner's ability to
> investigate and present his claims, along with any other
> relevant factors. Where the issues involved can be
> properly resolved on the basis of the state court record,
> a district court does not abuse its discretion in denying
> a request for court-appointed counsel.

Hoggard, 29 F.3d at 471 (citations omitted).

Because the case will be dismissed for the reasons stated
below, the motion for appointment of counsel is DENIED as moot.

On May 20, 2013, Respondent filed a Motion to Construe Answer
as Motion for Summary Judgment. (ECF No. 23.) Wilson filed his
response to the motion on June 11, 2013, in which he reiterated his
request for appointment of counsel. (ECF No. 24.) Respondent's
motion does not adequately state why a summary judgment motion is
appropriate in this case, how the Court is to apply the summary
judgment standard if Respondent is excused from submitting a

statement of undisputed facts, and how the summary judgment standard differs from the review conducted by the Court under Rule 8(a) of the § 2254 Rules upon receipt of the answer, reply, and state-court record. Instead, Respondent asks the Court to treat his Answer as a motion for summary judgment but does not explain how or why it should do so. The Motion for Summary Judgment is DENIED.

In an order issued on August 2, 2013, the Court directed Respondent to submit the manually filed exhibits within seven (7) calendar days. (ECF No. 26.) On August 19, 2013, Respondent filed his Second Notice of Manual Filing of Exhibits, which stated that "two recording exhibits shall be filed manually with the Clerk." (ECF No. 27 at 1.)[20] The manual exhibits were received on August 20, 2013 and August 21, 2013, respectively. (ECF Nos. 28 & 29.)

## II.        PETITIONER'S FEDERAL HABEAS CLAIMS

In his Petition, Wilson raises the following issues:

1.    "Whether the trial court's refusal to accept [Petitioner's] proffered plea bargain was an abuse of discretion and violation of the United States and Tennessee Constitutional Right to Due Process" (ECF No. 1 at 19);

2.    "Whether [trial] counsel was ineffective for failing to challenge the [trial] courts [sic]

---

[20]    The filing also explained that "Counsel did not discover this Court's August 2nd order from the email notice until after the close of business on Friday, August 16, 2013." (Id. at 1-2.) The Court will, *in this instance only*, excuse the late filing.

rejection of Guilty Plea and for failing to raise issue in Motion for New [Trial]" (id.);[21]

3.   "Whether the [trial] court's decision not to grant a [mistrial] following the [Petitioner's] outburst at [trial] violated [Petitioner's] United States and Tennessee Constitutional rights to a jury trial and Due Process" (id.);

4.   "Whether the trial court properly dismissed the Petition for writ of habeas corpus because there is no right to relief when the Petitioner is no longer imprisoned or restrained of his liberty as [a] direct result of challenged convictions" [and] "[w]hether [trial] counsel was ineffective for failing to attack the predicate judgements of conviction that were used to enhance Petitioner to career offender" (id.);

5.   Whether "[c]ounsel was ineffective for failing to request in writing that aggravated assault [be charged] as a lesser included offense of aggravated robbery" (id. at 20); and

---

[21]   For the sake of clarity, the Court has used the listing of issues contained in the handwritten document, titled "Petition Under 28 U.S.C. 2254 For Writ of Habeas Corpus By A Person In State Custody" (ECF No. 1 at 15-38), which differs somewhat from the listing in the form petition. The Court has renumbered issue I.A. as Issue II. (See ECF No. 1 at 19.)

6.   Whether "[c]ounsel was ineffective for failing to adequately investigate Petitioner's case and adequately prepare for [trial]" (id.).

## III.    THE LEGAL STANDARD

The statutory authority for federal courts to grant habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). A federal court may grant habeas relief to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

### A.   Waiver and Procedural Default

Twenty-eight U.S.C. §§ 2254(b) and (c) provide that a federal court may not grant a writ of habeas corpus on behalf of a state prisoner unless, with certain exceptions, the prisoner has exhausted available state remedies by presenting the same claim sought to be redressed in a federal habeas court to the state courts. Cullen v. Pinholster, ___ U.S. ___, ___, 131 S. Ct. 1388, 1398, 79 L. Ed. 2d 557 (2011). The petitioner must "fairly present"[22] each claim to all levels of state court review, up to and including the state's highest court on discretionary review,

_____

[22]    For a claim to be exhausted, "[i]t is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made." Anderson v. Harless, 459 U.S. 4, 6, 103 S. Ct. 276, 277, 74 L. Ed. 2d 3 (1982) (per curiam). Nor is it enough to make a general appeal to a broad constitutional guarantee. Gray v. Netherland, 518 U.S. 152, 163, 116 S. Ct. 2074, 2081, 135 L. Ed. 2d 457 (1996).

Baldwin v. Reese, 541 U.S. 27, 29, 124 S. Ct. 1347, 1349, 158 L. Ed. 2d 64 (2004), except where the state has explicitly disavowed state supreme court review as an available state remedy, O'Sullivan v. Boerckel, 526 U.S. 838, 847-48, 119 S. Ct. 1728, 1733-34, 144 L. Ed. 2d 1 (1999). Tennessee Supreme Court Rule 39 eliminated the need to seek review in the Tennessee Supreme Court in order to "be deemed to have exhausted all available state remedies." Adams v. Holland, 330 F.3d 398, 402 (6th Cir. 2003); *see* Smith v. Morgan, 371 F. App'x 575, 579 (6th Cir. 2010) (the Adams holding promotes comity by requiring that state courts have the first opportunity to review and evaluate claims and by mandating that federal courts respect the duly promulgated rule of the Tennessee Supreme Court that recognizes that court's law and policy-making function and its desire not to be entangled in the business of simple error correction).

The procedural default doctrine is ancillary to the exhaustion requirement. *See* Edwards v. Carpenter, 529 U.S. 446, 452-53, 120 S. Ct. 1587, 1592, 146 L. Ed. 2d 518 (2000) (noting the interplay between the exhaustion rule and the procedural default doctrine). If the state court decides a claim on an independent and adequate state ground, such as a procedural rule prohibiting the state court from reaching the merits of the constitutional claim, a petitioner ordinarily is barred from seeking federal habeas review. Wainwright v. Sykes, 433 U.S. 72, 87-88, 97 S. Ct. 2497, 2506-07, 52 L. Ed. 2d

594 (1977); *see* <u>Coleman v. Thompson</u>, 501 U.S. 722, 729-30, 111 S. Ct. 2546, 2555, 115 L. Ed. 2d 640 (1991) (a federal habeas court will not review a claim rejected by a state court "if the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment"). If a claim has never been presented to the state courts, but a state court remedy is no longer available (*e.g.*, when an applicable statute of limitations bars a claim), the claim is technically exhausted, but procedurally barred. <u>Coleman</u>, 501 U.S. at 732, 111 S. Ct. at 2555; *see* <u>Hicks v. Straub</u>, 377 F.3d 538, 551 (6th Cir. 2004) (the procedural default doctrine prevents circumvention of the exhaustion doctrine).

Under either scenario, a petitioner must show "cause" to excuse his failure to present the claim fairly and "actual prejudice" stemming from the constitutional violation or, alternatively, that a failure to review the claim will result in a fundamental miscarriage of justice. <u>Schlup v. Delo</u>, 513 U.S. 298, 322, 115 S. Ct. 851, 864, 130 L. Ed. 2d 808 (1995); <u>Coleman</u>, 501 U.S. at 750, 111 S. Ct. at 2565. The latter showing requires a petitioner to establish that a constitutional error has probably resulted in the conviction of a person who is actually innocent of the crime. <u>Schlup</u>, 513 U.S. at 321, 115 S. Ct. at 864; *see* <u>House v. Bell</u>, 547 U.S. 518, 536-39, 126 S. Ct. 2064, 2076-78, 165 L. Ed. 2d

1 (2006) (restating the ways to overcome procedural default and further explaining the actual innocence exception).

## B. Merits Review

Section 2254(d) establishes the standard for addressing claims that have been adjudicated in state courts on the merits:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). The petitioner carries the burden of proof for this "difficult to meet" and "highly deferential [AEDPA] standard," which "demands that state-court decisions be given the benefit of the doubt." Cullen, ___ U.S. at ___, 131 S. Ct. at 1398 (internal quotation marks and citations omitted).[23]

Review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. Cullen, ___ U.S. at ___, 131 S. Ct. at 1399. A state court's decision is "contrary" to federal law when it "arrives at a

---

[23]   The AEDPA standard creates "a substantially higher threshold" for obtaining relief than a *de novo* review of whether the state court's determination was incorrect. Schriro v. Landrigan, 550 U.S. 465, 473, 127 S. Ct. 1933, 1939, 167 L. Ed. 2d 836 (2007).

conclusion opposite to that reached" by the Supreme Court on a question of law or "decides a case differently than" the Supreme Court has "on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 1523, 146 L. Ed. 2d 389 (2000).[24] An "unreasonable application" of federal law occurs when the state court "identifies the correct governing legal principle from" the Supreme Court's decisions "but unreasonably applies that principle to the facts of the prisoner's case." Id. at 412-13, 120 S. Ct. at 1523. The state court's application of clearly established federal law must be "objectively unreasonable." Id. at 409, 120 S. Ct. at 1521. The writ may not issue merely because the habeas court, in its independent judgment, determines that the state court decision applied clearly established federal law erroneously or incorrectly. Renico v. Lett, 559 U.S. 766, ___, 130 S. Ct. 1855, 1862, 176 L. Ed. 2d 678 (2010); Williams, 529 U.S. at 411, 129 S. Ct. at 1522.

There is little case law addressing the standard in § 2254(d)(2) that a decision was based on "an unreasonable determination of facts." However, in Wood v. Allen, 558 U.S. 290, ___, 130 S. Ct. 841, 849, 175 L. Ed. 2d 738 (2010), the Supreme Court stated that a state-court factual determination is not

---

[24]    The "contrary to" standard does not require citation of Supreme Court cases "so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (per curiam); see Mitchell v. Esparza, 540 U.S. 12, 16, 124 S. Ct. 7, 10, 157 L. Ed. 2d 263 (2003) (same); Treesh v. Bagley, 612 F.3d 424, 429 (6th Cir. 2010) (same), cert. denied, ___ U.S. ___, 131 S. Ct. 1678, 179 L. Ed. 2d 622 (2011).

"unreasonable" merely because the federal habeas court would have reached a different conclusion. In Rice v. Collins, 546 U.S. 333, 341-42, 126 S. Ct. 969, 976, 163 L. Ed. 2d 824 (2006), the Court explained that "[r]easonable minds reviewing the record might disagree" about the factual finding in question, "but on habeas review that does not suffice to supersede the trial court's . . . determination."[25]

"Notwithstanding the presumption of correctness, the Supreme Court has explained that the standard of § 2254(d)(2) is 'demanding but not insatiable.'" Harris v. Haeberlin, 526 F.3d 903, 910 (6th Cir. 2008) (quoting Miller-El v. Dretke, 545 U.S. 231, 240, 125 S. Ct. 2317, 2325, 162 L. Ed. 2d 196 (2005)). "Even in the context of federal habeas, deference does not imply abandonment or abdication of judicial review.'" Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003). A state court adjudication will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding. Ayers v. Hudson, 623 F.3d 301, 308 (6th Cir. 2010); see Hudson v. Lafler, 421 F. App'x 619, 624 (6th Cir.

---

[25]    In Wood, 120 S. Ct. at 845, 848, the Supreme Court granted certiorari to resolve whether, to satisfy § 2254(d)(2), a petitioner must establish only that the state-court factual determination on which the decision was based was "unreasonable," or whether § 2254(e)(1) additionally requires a petitioner to rebut a presumption that the determination was correct with clear and convincing evidence. The Court ultimately found it unnecessary to reach that issue. Id. at 849, 851. In Rice, 546 U.S. at 339, 126 S. Ct. at 974, the Court recognized that it is unsettled whether there are some factual disputes where § 2254(e)(1) is inapplicable.

2011) (same), *cert. denied*, ___ U.S. ___, 132 S. Ct. 1085, 181 L. Ed. 2d 803 (2012).

**IV.       ANALYSIS OF PETITIONER'S CLAIMS**

    **A.   The Failure to Accept Wilson's Guilty Plea (Claim 1)**

In his first issue, Wilson argues that the trial judge abused his discretion by refusing to accept his guilty plea, which would have resulted in a negotiated sentence of fifteen (15) years, because Wilson refused to retract his complaints about defense counsel. (ECF No. 1 at 5, 21-26.)

Wilson raised this issue on direct appeal,[26] but the Tennessee Court of Criminal Appeals held that it had been waived:

> On appeal, the defendant first argues that the trial court abused its discretion in failing to accept his guilty plea. Generally, the failure to raise an issue in a motion for new trial results in a waiver. *See* Tenn. R. App. P. 3(e); Tenn. R. App. P. 36(a). However, we may address the issue in the event there was plain error on the part of the trial court. <u>State v. Smith</u>, 24 S.W.3d 274, 282 (Tenn. 2000). If this court is to review the defendant's claim, we must do so through the process of "plain error" review embodied in Tennessee Rule of Criminal Procedure 52(b), which provides:
>
> > An error which has affected the substantial rights of an accused may be noticed at any time, even though not raised in the motion for a new trial or assigned as error on appeal, in the discretion of the appellate court where necessary to do substantial justice.
>
> There are five factors which must be present for a court to determine "plain error" exists:

---

[26]  *See* Br. of Appellant at 3, 7-12, <u>State v. Wilson</u>, No. W2005-00307-CCA-R3-CD (Tenn. Crim. App.), ECF No. 18-8 at PageID 570, 574-79.

(a) the record must clearly establish what occurred in the trial court;

(b) a clear and unequivocal rule of law must have been breached;

(c) a substantial right of the accused must have been adversely affected;

(d) the accused did not waive the issue for tactical reasons; and

(e) consideration of the error is "necessary to do substantial justice."

Smith, 24 S.W.3d at 282 (quoting State v. Adkisson, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994)). The presence of all factors must be established before a trial error is considered "plain error." Smith, 24 S.W.3d at 283.

It is our view that the defendant has waived the issue; and furthermore, that the trial court's refusal to accept the defendant's guilty plea was not plain error. The defendant asserts that each of the Adkisson factors are present in this case; however, we fail to see what "clear and unequivocal rule of law" was breached. While we recognize that "[t]he right to plead not guilty has inherently and constitutionally within it the right to plead guilty[,]" the defendant does not have an absolute right to have his guilty plea accepted by the trial court. See Santobello v. New York, 404 U.S. 257, 262, 92 S. Ct. 495, 30 L. Ed. 2d 427 (1971); Goosby v. State, 917 S.W.2d 700, 705 (Tenn. Crim. App. 1995); Lawrence v. State, 2 Tenn. Crim. App. 638, 455 S.W.2d 650, 651 (Tenn. Crim. App. 1970). The trial court, in its discretion, determines whether a defendant is entering his or her plea knowingly, intelligently, and voluntarily and can accept or reject the plea based on that determination. Tenn. R. Crim. P. 11(c), (d); Goosby, 917 S.W.2d at 706. Accordingly, having found no plain error, the issue is waived.

State v. Wilson, 2005 WL 3533339, at *2.

As a preliminary matter, this Court cannot address habeas claims arising from alleged violations of the Tennessee

18

Constitution. *See* 28 U.S.C. § 2254(a). The order will address only alleged violations of the United States Constitution.

Respondent contends that Claim 1 is barred by procedural default because Petitioner did not properly raise it in state court. (ECF No. 17 at 18-20.) If a state court decides a claim on an independent and adequate state ground, such as a procedural rule prohibiting the state court from reaching the merits of the constitutional claim, the petitioner ordinarily is barred by procedural default from seeking federal habeas review. *See supra* p. 12. The Sixth Circuit applies a four-part test to determine whether a habeas claim has been procedurally defaulted due to a petitioner's failure to comply with a state procedural rule:

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. . . .
>
> Second, the court must decide whether the state courts actually enforced the state procedural sanction. . . .
>
> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim. . . .
>
> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under <u>Sykes</u> that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

19

<u>Maupin v. Smith</u>, 785 F.2d 135, 138 (6th Cir. 1985) (citations and footnote omitted); *see also* <u>Van Hook v. Bobby</u>, 661 F.3d 264, 269 (6th Cir. 2011), *cert. denied sub. nom.* <u>Van Hook v. Robinson</u>, ___ U.S. ___, 132 S. Ct. 1917, 182 L. Ed. 2d 781 (2012); <u>Clinkscale v. Carter</u>, 375 F.3d 430, 440-41 (6th Cir. 2004).

A motion for a new trial is the proper procedural vehicle for bringing trial error to the attention of the trial judge after entry of judgment. *See* Tenn. R. Crim. P. 33. Rule 3(e) of the Tennessee Rules of Appellate Procedure provides, in pertinent part, as follows:

> An appeal as of right may be taken without moving in arrest of judgment, praying for an appeal, entry of an order permitting an appeal or compliance with any other similar procedure. Provided, however, that in all cases tried by a jury, no issue presented for review shall be predicated upon error in the admission or exclusion of evidence, jury instructions granted or refused, misconduct of jurors, parties or counsel, or other action committed or occurring during the trial of the case, or other ground upon which a new trial is sought, unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived.

The version of Tennessee Rule of Appellate Procedure 36 in effect at the time of Petitioner's direct appeal provided as follows:

> **(a) Relief to Be Granted; Relief Available.** The Supreme Court, Court of Appeals, and Court of Criminal Appeals shall grant the relief on the law and facts to which the party is entitled or the proceeding otherwise requires and may grant any relief, including the giving of any judgment and making of any order; provided, however, relief may not be granted in contravention of the province of the trier of fact. Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever

20

action was reasonably available to prevent or nullify the harmful effect of an error.

**(b) Effect of Error.** A final judgment from which relief is available and otherwise appropriate shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process.

Thus, Tennessee has a procedural rule that requires alleged errors such as the trial judge's refusal to accept Wilson's guilty plea to be raised in a motion for a new trial. Wilson failed to comply with that procedural rule because the issue was not raised in his new trial motion.[27] Therefore, the first _Maupin_ factor has been satisfied. The second _Maupin_ factor also has been satisfied, as the Tennessee Court of Criminal Appeals stated that "[i]t is our view that [Wilson] has waived the issue." _State v. Wilson_, 2005 WL 3533339, at *2.

That the Tennessee Court of Criminal Appeals also addressed the merits of this issue under the deferential "plain error" standard does not alter its conclusion that the issue was waived. As the Supreme Court has explained:

After _Harris [v. Reed_, 489 U.S. 255, 109 S. Ct. 1038, 103 L. Ed. 2d 308 (1989)], federal courts on habeas corpus review of state prisoner claims, like this Court on direct review of state court judgments, will presume that there is no independent and adequate state ground for a state court decision when the decision "fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion."

---

[27]     _See supra_ n.6.

Coleman v. Thompson, 501 U.S. at 734-35, 111 S. Ct. at 2557 (quoting Mich. v. Long, 463 U.S. 1032, 1040-41, 103 S. Ct. 3469, 3476-77, 77 L. Ed. 2d 1201 (1983)); *see also* id. at 733, 111 S. Ct. at 2556 ("After Long, a state court that wishes to look to federal law for guidance or as an alternative holding while still relying on an independent and adequate state ground can avoid the presumption by stating 'clearly and expressly that [its decision] is ... based on bona fide separate, adequate, and independent grounds.'") (quoting Long, 463 U.S. at 1041, 103 S. Ct. at 3476). In this case, the Tennessee Court of Criminal Appeals plainly stated that Wilson's challenge to the trial judge's refusal to accept his guilty plea was waived. *See* State v. Wilson, 2005 WL 3533339, at *2 ("It is our view that the defendant has waived the issue; and furthermore, that the trial court's refusal to accept the defendant's guilty plea was not plain error. . . . Accordingly, having found no plain error, the issue is waived."). This is a sufficiently clear statement to warrant a finding of procedural bar. Scott v. Mitchell, 209 F.3d 854, 877 (6th Cir. 2000); Coe v. Bell, 161 F.3d 320, 330-31 (6th Cir. 1998). Therefore, the second Maupin factor has been satisfied.

The third requirement, that the state procedural rule must be an "adequate and independent" state ground, focuses on "the legitimate state interests behind the procedural rule in light of the federal interest in considering federal claims." Maupin, 785

F.2d at 138; *see also* <u>Henry v. Mississippi</u>, 379 U.S. 443, 447-48, 85 S. Ct. 564, 567, 13 L. Ed. 2d 408 (1965) ("[A] litigant's procedural defaults in state proceedings do not prevent vindication of his federal rights unless the State's insistence on compliance with its procedural rule serves a legitimate state interest. In every case we must inquire whether the enforcement of a procedural forfeiture serves such a state interest. If it does not, the state procedural rule ought not be permitted to bar vindication of important federal rights."). The adequacy of a state procedural rule "is itself a federal question." <u>Lee v. Kemna</u>, 534 U.S. 362, 375, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002). "Ordinarily, violation of 'firmly established and regularly followed' state rules . . . will be adequate to foreclose review of a federal claim." <u>Id.</u> at 376, 122 S. Ct. at 885. The Supreme Court has held a procedural ground to be inadequate in "exceptional cases," such as where the application of a "generally sound rule" has been deemed "exorbitant." <u>Id.</u> at 376, 122 S. Ct. at 885-86; *see also* <u>Walker v. Martin</u>, ___ U.S. ___, ___, 131 S. Ct. 1120, 1130, 179 L. Ed. 2d 62 (2011) (a state procedural rule may be inadequate when a state court "exercised its discretion in a surprising or unfair manner").

A review of Tennessee cases demonstrates that the Tennessee procedural rules relied on by the Court of Criminal Appeals in this case are firmly established. *See, e.g.*, <u>State v. Smith</u>, 24 S.W.3d

274, 282 (Tenn. 2000); State v. Martin, 940 S.W.2d 567, 569 (Tenn. 1997); State v. Harding, No. M2011-CCA-R3-CD, 2013 WL 285750, at *15 (Tenn. Crim. App. Jan. 25, 2013); State v. Segurra, No. W2010-00952-CCA-R3-CD, 2012 WL 4078910, at *14 (Tenn. Crim. App. Sept. 18, 2012); State v. Haley, No. W2009-01800-CCA-R3-CD, 2010 WL 3605235, at *3 (Tenn. Crim. App. Sept. 16, 2010), *appeal denied* (Tenn. Feb. 17, 2011); State v. Dile, No. M2008-00389-CCA-R3-CD, 2009 WL 3031257, at *11 (Tenn. Crim. App. Sept. 24, 2009), *appeal denied* (Tenn. Mar. 15, 2010); State v. Gilliam, No. W2007-02401-CCA-R3-CD, 2009 WL 3015122, at *9 (Tenn. Crim. App. Sept. 22, 2009). Therefore, the third Maupin factor has been satisfied.

The fourth Maupin factor has also been satisfied. Although Wilson attributes the "cause" to the ineffective assistance of his trial counsel, he cannot show prejudice because he does not contend that he is factually innocent of the offense of conviction. *See supra* p. 13. To the contrary, he admitted his guilt and attempted to plead guilty.[28] Therefore, this issue is barred by procedural default due to Wilson's failure properly to preserve the issue in his motion for a new trial.

Claim 1 is without merit and is DISMISSED.

---

[28]    *See* 07/12/2004 Tr. 62-64, State v. Wilson, No. 04 01773 (Shelby Cnty. Crim. Ct.), ECF No. 18-2 at PageID 253-55. Wilson admitted that he attempted to rob the store with an item fashioned to look like a gun.

**B.    Trial Counsel's Failure to Preserve the Guilty Plea Issue
in the Motion for a New Trial (Claim 2)**

In his second issue, Wilson contends that his trial counsel
rendered ineffective assistance, in violation of the Sixth
Amendment, by failing to raise the trial judge's refusal to accept
his guilty plea in his motion for a new trial. (ECF No. 1 at 19,
24-26.) Wilson raised the issue in the post-conviction proceeding,
where the following testimony was received:

> Trial counsel also testified that they tried to
> enter a guilty plea prior to trial but it was ultimately
> rejected by the trial court. She recalled that the State
> and the petitioner discussed the plea for two hours. The
> petitioner called her a "bitch" and caused her to be
> worried for her safety because of his anger. She
> testified that she did her best to secure a good deal for
> the petitioner, with an offer of fifteen years as a Range
> II offender. The petitioner finally agreed to the offer
> but was "playing games" on the witness stand and, as a
> result, the trial judge would not accept the plea. She
> did not object because she believed it was the trial
> judge's discretion to accept or reject the plea. She did
> not include the issue in the petitioner's motion for new
> trial because she did not think it was an appropriate
> issue in that motion. Counsel said that she wanted the
> petitioner to accept the plea agreement because it was in
> his best interest, considering the strength of the
> State's case against him.

Wilson v. State, 2010 WL 2384895, at *1.

The post-conviction court denied relief on the merits, stating
as follows:

> Petitioner raised in his direct appeal a claim that
> the trial judge abused his discretion in refusing to
> accept his guilty plea to a negotiated plea agreement.
> The Court of Criminal Appeals considered the issue
> "waived" for failure to include it in the motion for new
> trial. The Court of Criminal Appeals further found that
> the issue did not rise to the level of "plain error."

Although it is unclear whether the Court of Criminal Appeals considered this issue on its merits, the court did note that a defendant does not have an absolute right to have a guilty plea accepted and that trial judge's [sic] have discretion to accept or reject a guilty plea. Further, the law is clear that a trial judge is afforded discretion in determining whether to accept a guilty plea, and the judge's decision will not be reversed on appeal absent a plain abuse of authority. *See* <u>State v. Williams</u>, 851 S.W.2d 828 (Tenn. Crim. App. 1992). Likewise, a trial judge has the discretion to reject a plea agreement. *See* <u>State v. Hines</u>, 919 S.W.2d 573 (Tenn. 1995).

At the evidentiary hearing, Ms. Massey testified that she did not "object" to the judge's refusal to accept the guilty plea because she felt it was a matter for the judge's discretion. She also testified that she did not place this issue in the motion for new trial because she did not think it was necessary and she did not believe the trial judge abused his discretion in refusing to accept the plea. In this context, the Petitioner has shown neither deficient performance by counsel in failing to challenge the judge's rejection of the plea agreement or prejudice. The trial judge had discretion to reject the guilty plea to the negotiated plea agreement.[29]

The Tennessee Court of Criminal Appeals affirmed, stating as follows:

The right to effective assistance of counsel is safeguarded by the constitutions of both the United States and the State of Tennessee. *See* U.S. Const. Amend. VI; Tenn. Const. Art. I, § 9. In order to determine the competence of counsel, Tennessee courts have applied standards developed in federal case law. *See* <u>State v. Taylor</u>, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that the same standard for determining ineffective assistance of counsel applicable in federal cases also applies in Tennessee). The United States Supreme Court articulated the standard in <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d

---

[29]   Findings of Fact & Conclusions of Law on Pet. for Post-Conviction Relief at 13, <u>Wilson v. State</u>, No. 04 01773 (Shelby Cnty. Crim. Ct.), ECF No. 18-14 at PageID 753.

674 (1984), which is widely accepted as the appropriate standard for all convicted petitioners' claims of ineffective assistance of counsel. The standard is firmly grounded in the belief that counsel plays a role that is "critical to the ability of the adversarial system to produce just results." Id. at 685, 104 S. Ct. at 2063. The Strickland standard is a two-prong test:

> First, the [petitioner] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable.

Id. at 687, 104 S. Ct. at 2064. The Strickland court further explained the meaning of "deficient performance" in the first prong of the test in the following way:

> In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances ... No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant.

Id. at 688-89, 104 S. Ct. at 2065. The petitioner must establish "that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms." House v. State, 44 S.W.3d 508, 515 (Tenn. 2001)(citing Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996)).

As for the prejudice prong of the test, the Strickland Court stated that "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694, 104 S. Ct. at 2068; see also Overton v. State, 874 S.W.2d 6, 11

27

(Tenn. 1994)(concluding that the petitioner failed to establish that "there is a reasonable probability that, but for counsel's errors, the outcome of the proceedings would have been different").

The issues of deficient performance of counsel and possible prejudice to the defense are mixed questions of law and fact and, thus, are subject to *de novo* review by the appellate court. *See* <u>Wiley</u>, 183 S.W.3d 317, 325 (Tenn. 2006); <u>State v. Burns</u>, 6 S.W.3d 453, 461 (Tenn. 1999). The reviewing court must indulge a strong presumption that the conduct of counsel falls within the range of reasonable professional assistance, *see* <u>Strickland</u>, 466 U.S. at 690, 104 S. Ct. at 2066, and may not second-guess the tactical and strategic choices made by trial counsel unless those choices were uninformed because of inadequate preparation. *See* <u>Hellard v. State</u>, 629 S.W.2d 4, 9 (Tenn. 1982). The fact that a strategy or tactic failed or hurt the defense does not, alone, support the claim of ineffective assistance of counsel. *See* <u>Thompson v. State</u>, 958 S.W.2d 156, 165 (Tenn. Crim. App. 1997). Finally, a person charged with a criminal offense is not entitled to perfect representation. *See* <u>Denton v. State</u>, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). As explained in <u>Burns</u>, 6 S.W.3d at 462, "[c]onduct that is unreasonable under the facts of one case may be perfectly reasonable under the facts of another."

. . . .

Next, the petitioner argues that counsel was ineffective for failing to challenge the trial court's rejection of his guilty plea and for failing to raise the issue in a motion for new trial. The post-conviction court noted that the petitioner raised this issue on direct appeal, but this court held that the issue was waived for failure to include it in his motion for new trial. This court also held that the issue did not rise to the level of plain error.

This court's opinion on direct appeal held that a defendant has the inherent and constitutional right to plead guilty but that there is no absolute right to have his guilty plea accepted by the trial court. <u>State v. Paul Wilson</u>, 2005 WL 3533339 at *2. The trial court, in its discretion, determines whether to accept or reject a guilty plea. The petitioner has failed to demonstrate that counsel was deficient in this issue.

Wilson v. State, 2010 WL 2384895, at *2-3, *4.

A claim that ineffective assistance of counsel has deprived a defendant of his Sixth Amendment right to counsel is controlled by the standards stated in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To demonstrate deficient performance by counsel, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness." Id. at 688, 104 S. Ct. at 2064. "A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance. [Strickland, 466 U.S.] at 689, 104 S. Ct. 2052. The challenger's burden is to show 'that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.' Id., at 687, 104 S. Ct. 2052." Harrington v. Richter, ___ U.S. ___, ___, 131 S. Ct. 770, 787, 178 L. Ed. 2d 624 (2011).

To demonstrate prejudice, a prisoner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068.[30] "A reasonable probability is a probability sufficient to undermine confidence in

---

[30]    "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant." Id. at 697, 104 S. Ct. at 2069. If a reviewing court finds a lack of prejudice, it need not determine whether, in fact, counsel's performance was deficient. Id. at 697, 104 S. Ct. at 2069.

the outcome." Id. at 694, 104 S. Ct. at 2068. "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.' [Srickland, 466 U.S.] at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.' Id., at 687, 104 S. Ct. 2052." Richter, ___ U.S. at ___, 131 S. Ct. at 787-88; *see also* id. at ___, 131 S. Ct. at 791-72 ("In assessing prejudice under Strickland, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. . . . The likelihood of a different result must be substantial, not just conceivable.") (citations omitted); Wong v. Belmontes, 558 U.S. 15, 27, 130 S. Ct. 383, 390-91, 175 L. Ed. 2d 328 (2009) (per curiam) ("But Strickland does not require the State to 'rule out' [a more favorable outcome] to prevail. Rather, Strickland places the burden on the defendant, not the State, to show a 'reasonable probability' that the result would have been different.").

"Surmounting Strickland's high bar is never an easy task." Padilla v. Ky., 559 U.S. 356, ___, 130 S. Ct. 1473, 1385 (2010).

> An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. Strickland, 466 U.S., at 689-690, 104 S. Ct. 2052. Even under *de novo* review, the standard for judging counsel's

> representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." Id., at 689, 104 S. Ct. 2052; see also Bell v. Cone, 535 U.S. 685, 702, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002); Lockhart v. Fretwell, 506 U.S. 364, 372, 113 S. Ct. 838, 122 L. Ed. 2d 180 (1993). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. Strickland, 466 U.S., at 690, 104 S. Ct. 2052.

Richter, ___ U.S. at ___, 131 S. Ct. at 788.

When an ineffective assistance claim is reviewed under § 2254(d), the review is "doubly deferential." Knowles v. Mirzayance, 556 U.S. 111, 123, 129 S. Ct. 1411, 1420, 173 L. Ed. 2d 251 (2009).

> Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both "highly deferential," id., at 689, 104 S. Ct. 2052; Lindh v. Murphy, 521 U.S. 320, 333, n. 7, 117 S. Ct. 2059, 138 L. Ed. 2d 481 (1997), and when the two apply in tandem, review is "doubly" so, Knowles, 556 U.S., at ----, 129 S. Ct. at 1420. The Strickland standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ----, 129 S. Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

Richter, ___ U.S. at ___, 131 S. Ct. at 788.

Because the Petition does not address the standards for evaluating habeas claims on the merits, it is unclear whether Wilson contends that the decision of the Tennessee Court of

Criminal Appeals on this issue was "contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or whether it "was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding," id. § 2254(d)(2).

The decision of the Tennessee Court of Criminal Appeals was not contrary to Strickland v. Washington. This is "a run-of-the-mill state-court decision applying the correct legal rule from [Strickland] to the facts of a prisoner's case" and, therefore, it "does not fit comfortably within § 2254(d)(1)'s 'contrary to' clause." Williams v. Taylor, 529 U.S. at 406, 120 S. Ct. at 1520.[31]

Wilson also has failed to satisfy his burden of demonstrating that the decision of the Tennessee Court of Criminal Appeals was an unreasonable application of Strickland v. Washington or that it was based on an unreasonable determination of the facts. The trial judge's suspicion that Wilson was attempting to use the hearing to set up a post-conviction claim that he was forced to plead guilty was not objectively unreasonable. The 81-page transcript of the hearing on July 12, 2004, provides ample support for the

---

[31]     The Supreme Court has emphasized the narrow scope of the "contrary to" clause, explaining that "a run-of-the-mill state-court decision applying the correct legal rule from our cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause." Id. at 406, 120 S. Ct. at 1520; see also id. at 407, 120 S. Ct. at 1520 ("If a federal habeas court can, under the 'contrary to' clause, issue the writ whenever it concludes that the state court's application of clearly established federal law was incorrect, the 'unreasonable application' test becomes a nullity.").

conclusions of the trial judge. The transcript reveals that Wilson was given numerous opportunities to state that he was pleading guilty because it was in his best interest.[32] Wilson persisted in stating that, if only he could hire the late Johnnie Cochran or F. Lee Bailey, he would prefer to try the case.[33] Wilson has failed to identify controlling precedent that requires a trial judge in Tennessee to accept a defendant's guilty plea. Wilson also has cited no authority for the proposition that the trial judge abused his discretion under the facts of this case. Under these circumstances, he cannot establish either deficient performance or prejudice.

The second issue is without merit and is DISMISSED.

**C.   The Failure to Declare a Mistrial (Claim 3)**

In his third issue, Wilson argues that the trial judge's failure to declare a mistrial after his outburst during the State's closing argument violated his rights to a jury trial and to due process. (ECF No. 1 at 19, 27-28.)

Wilson raised this issue on direct appeal,[34] and the Tennessee Court of Criminal Appeals denied relief on the merits, stating s follows:

---

[32]   *See, e.g.*, 07/12/2004 Tr. 65-73, <u>State v. Wilson</u>, No. 04 01773 (Shelby Cnty. Crim. Ct.), ECF No. 18-2.

[33]   <u>Id.</u> at 74-75.

[34]   *See* Br. of Appellant at 3, 12-13, <u>State v. Wilson</u>, No. W2005-00307-CCA-R3-CD (Tenn. Crim. App.), ECF No. 18-8 at PageID 570, 579-80.

Turning to the trial court's refusal to grant a mistrial, we note that the determination of whether to grant a mistrial rests within the sound discretion of the trial court. State v. Smith, 871 S.W.2d 667, 672 (Tenn. 1994). The reviewing court should not overturn that decision absent an abuse of discretion. State v. Reid, 91 S.W.3d 247, 279 (Tenn. 2002). A mistrial is usually appropriate in a criminal case only where there is a "manifest necessity." Arnold v. State, 563 S.W.2d 792, 794 (Tenn. Crim. App. 1977). The purpose for declaring a mistrial is to correct damage done to the judicial process when some event has occurred which prevents an impartial verdict. Id. The burden of establishing the necessity for mistrial lies with the party seeking it. State v. Williams, 929 S.W.2d 385, 388 (Tenn. Crim. App. 1996).

The defendant asserts that the trial court's curative instruction was ineffective because "[i]t is highly unlikely that a jury could have totally disregarded [his] confession during the outburst." However, our review leads us to conclude that the defendant has failed to meet his burden of showing a "manifest necessity" requiring a mistrial. The record reflects that the trial court swiftly took action to remove the defendant once he began his outburst. More importantly, the trial court instructed the jury that the defendant's statements were not to be considered in deciding the case. Additionally, the court polled the jurors to ensure that the individuals could still render an impartial verdict. The jurors affirmed that they could do so. Without evidence to the contrary, the jury's compliance with the trial court's curative instruction is presumed. See State v. Vanzant, 659 S.W.2d 816, 819 (Tenn. Crim. App. 1983). Accordingly, it is our view the trial court did not abuse its discretion by denying the defendant's motion for a mistrial; thus, the defendant is not entitled to relief on this issue.

State v. Wilson, 2005 WL 3533339, at *4.

Wilson has not satisfied his burden of demonstrating that he is entitled to habeas relief. He has presented no argument that the decision of the Tennessee Court of Criminal Appeals concerning the failure to declare a mistrial was contrary to, or an unreasonable

application of, clearly established federal law, as required by 28
U.S.C. § 2254(d)(1), or was based on an unreasonable factual
determination, under 28 U.S.C. § 2254(d)(2).

The Supreme Court has recognized that trial judges have broad
discretion in determining whether to grant a mistrial. Ill. v.
Somerville, 410 U.S. 458, 462, 93 S. Ct. 1066, 1069, 35 L. Ed. 2d
425 (1973). The legal standards used to review claims by habeas
petitioners that a trial judge abused his discretion in granting or
denying a mistrial have been summarized by the Supreme Court:

> It is important at the outset to define the question
> before us. That question is not whether the trial judge
> should have declared a mistrial. It is not even whether
> it was an abuse of discretion for her to have done so —
> the applicable standard on direct review. The question
> under AEDPA is instead whether the determination of the
> Michigan Supreme Court that there was no abuse of
> discretion was "an unreasonable application of ...
> clearly established Federal law." § 2254(d)(1).
>
> . . . .
>
> The "clearly established Federal law" in this area
> is largely undisputed. In [United States v. Perez, 22
> U.S. (1 Wheat.) 579, 6 L. Ed. 165 (1824),] we held that
> when a judge discharges a jury on the grounds that the
> jury cannot reach a verdict, the Double Jeopardy Clause
> does not bar a new trial for the defendant before a new
> jury. 9 Wheat., at 579–580, 6 L. Ed. 165. We explained
> that trial judges may declare a mistrial "whenever, in
> their opinion, taking all the circumstances into
> consideration, there is a manifest necessity" for doing
> so. Id., at 580. The decision to declare a mistrial is
> left to the "sound discretion" of the judge, but "the
> power ought to be used with the greatest caution, under
> urgent circumstances, and for very plain and obvious
> causes." Ibid.
>
> Since Perez, we have clarified that the "manifest
> necessity" standard "cannot be interpreted literally,"

and that a mistrial is appropriate when there is a "'high degree'" of necessity. [Ariz. v. Washington, 434 U.S. 497, 506, 98 S. Ct. 824, 831, 54 L. Ed. 2d 717 (1978).] The decision whether to grant a mistrial is reserved to the "broad discretion" of the trial judge, a point that "has been consistently reiterated in decisions of this Court." Illinois v. Somerville, 410 U.S. 458, 462, 93 S. Ct. 1066, 35 L. Ed. 2d 425 (1973). See also Gori v. United States, 367 U.S. 364, 368, 81 S. Ct. 1523, 6 L. Ed. 2d 901 (1961).

. . . .

The legal standard applied by the Michigan Supreme Court in this case was whether there was an abuse of the "broad discretion" reserved to the trial judge. Somerville, supra, at 462, 93 S. Ct. 1066; Washington, supra, at 509, 98 S. Ct. 824. This type of general standard triggers another consideration under AEDPA. When assessing whether a state court's application of federal law is unreasonable, "the range of reasonable judgment can depend in part on the nature of the relevant rule" that the state court must apply. Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S. Ct. 2140, 158 L. Ed. 2d 938 (2004). Because AEDPA authorizes federal courts to grant relief only when state courts act unreasonably, it follows that "[t]he more general the rule" at issue — and thus the greater the potential for reasoned disagreement among fair-minded judges — "the more leeway [state] courts have in reaching outcomes in case-by-case determinations." Ibid.; see also Knowles v. Mirzayance, 556 U.S. 111, ----, 129 S. Ct. 1411, 1420, 173 L. Ed. 2d 251 (2009).

Renico v. Lett, 559 U.S. at ___, ___, 130 S. Ct. at 1862-63, 1864.

Wilson has not established that the decision of the Tennessee Court of Criminal Appeals was contrary to any controlling Supreme Court decision. Although the Tennessee Court of Criminal Appeals did not cite any Supreme Court decisions, the opinion was a run-of-the-mill decision applying the correct legal rule to the facts of a prisoner's case. See State v. Wilson, 2005 WL 3533339, at *4.

Wilson also has not established that the state-court decision was an objectively unreasonable application of controlling Supreme Court precedent or was based on an unreasonable factual determination. Under § 2254(d), the issue is not whether the trial judge should have granted a mistrial but, instead, whether the conclusion of the Tennessee Court of Criminal Appeals that the trial judge did not abuse his discretion in failing to do so was an unreasonable application of clearly established federal law. Renico, 559 U.S. at ___, 130 S. Ct. at 1862; see also id. at ___, 130 S. Ct. at 1864 (noting the broad leeway trial courts have when the legal standard is as broad as an abuse of "broad discretion"). The record fully supports the statement of the Tennessee Court of Criminal Appeals that "the trial court swiftly took action to remove the defendant once he began his outburst." State v. Wilson, 2005 WL 3533339, at *4. The record reflects that the trial judge, who was familiar with Wilson's propensity to outbursts, gave the order to remove him before Wilson had completed his first sentence.[35] Wilson's entire outburst, including the statements of the trial judge, took up less than one full page of the transcript.[36] The trial judge immediately instructed the jury that Wilson's statements were to be disregarded, and he also polled the jury to ensure that each juror could decide the case on the proof

---

[35]    Trial Tr. 135, State v. Wilson, No. 04 01773 (Shelby Cnty. Crim. Ct.), ECF No. 18-3 at PageID 410.

[36]    See id. at 135-36.

without consideration of Wilson's statement.[37] The judge also asked the jurors whether they would hold Wilson's statement against him.[38] Shortly thereafter, the trial judge stated on the record at a jury-out conference, with Wilson present, that "I polled the jury while Mr. Wilson was gone asking them, and I'm saying this for his benefit because the record reflects it, they all said they could still be fair to Mr. Wilson. And they would not regard anything that he said, and they wouldn't hold it against them. I elected to continue with [the State's] closing argument."[39]

Finally, although not emphasized by the Tennessee Court of Criminal Appeals, the decision not to grant a mistrial was not objectively unreasonable. The evidence against Wilson at trial was overwhelming. The victim gave a full description of the man who had robbed him and testified that he knew the robber by sight because "[h]e came in the store quite often," "at least two or three times a week."[40] The victim was also familiar with the robber's car, which he described as "a gray Cadillac with damage on the passenger side."[41] The victim identified Wilson as the robber on the day of

---

[37]     Id. at 136-39.

[38]     Id. at 139-40.

[39]     Id. at 148.

[40]     Id. at 31.

[41]     Id. at 32; *see also* id. at 34-35 (identifying a photograph of the car).

the offense and at trial.[42] Wilson gave a statement to police in which he admitted that he committed the robbery but stated that he was not armed with a real weapon. Wilson told the police that "I only had a black ink pen in my hand with a towel wrapped around it so it would look like a gun handle."[43] The jury was instructed that a defendant may be convicted of aggravated robbery if he "display[s] any article used or fashioned to lead the alleged victim to reasonably believe the article to be a deadly weapon."[44] The defense rested without presenting any evidence.[45]

Therefore, the third issue is without merit and is DISMISSED.

### D.    The Convictions Used to Enhance Wilson's Sentence (Claim 4)

In his fourth issue, Wilson argues that the trial court erred in dismissing his state habeas petition, which challenged the prior convictions used to enhance his sentence. Wilson also asserts that his trial counsel rendered ineffective assistance by failing to attack the predicate convictions that were used to sentence him as a career offender. (ECF No. 1 at 19, 30, 32-38.)

As previously noted, *see supra* p. 3, in 2005 Wilson filed a petition for a writ of habeas corpus in the Circuit Court for Hardeman County, Tennessee, challenging the various convictions

---

[42]    Id. at 33-34.

[43]    Id. at 96.

[44]    Jury Instructions, State v. Wilson, No. 04 01773 (Shelby Cnty. Crim. Ct.), ECF No. 18-6 at PageID 489.

[45]    Trial Tr. 109, id., ECF No. 18-3 at PageID 384.

that were used to sentence him as a career offender in the instant case. The Tennessee Court of Criminal Appeals affirmed the dismissal of that petition, noting that habeas relief was not available because Wilson was no longer "in custody" on the 1986 and 1994 judgments. Wilson v. Dotson, 2006 WL 1205636, at *2.

The only conviction at issue in this case is Wilson's 2005 conviction for aggravated robbery. The law is clear that,

> once a state conviction is no longer open to direct or collateral attack in its own right because the defendant failed to pursue those remedies while they were available (or because the defendant did so unsuccessfully), the conviction may be regarded as conclusively valid. If that conviction is later used to enhance a criminal sentence, the defendant generally may not challenge the enhanced sentence through a petition under § 2254 on the ground that the prior conviction was unconstitutionally obtained.

Lackawanna Cnty. Dist. Attorney v. Coss, 532 U.S. 394, 403, 121 S. Ct. 1567, 1574, 149 L. Ed. 2d 608 (2001) (citations omitted). Thus, Wilson cannot challenge the validity of his 1996 and 1994 convictions in this § 2254 petition. This aspect of the fourth issue is meritless.[46]

---

[46]    Respondent states that this aspect of the Petition is time barred. (ECF No. 17 at 29.) It is unnecessary to address the statute of limitations because the Petition, on its face, challenges only the 2005 conviction for aggravated robbery.

The ineffective-assistance portion of this issue was raised in the post-conviction petition[47] and on the post-conviction appeal.[48] The Tennessee Court of Criminal Appeals denied relief, stating as follows:

> Trial counsel testified that she did not review the petitioner's prior convictions because they had already been served and were all of a classification to raise his sentencing range. The petitioner did not raise any objections to her about the validity of his prior convictions. She acknowledged that she only met with the petitioner in court because she was concerned for her safety with him in the jail. She also testified that the petitioner was not communicative with her and had announced in court that he did not want to speak with her again.
>
> . . . .
>
> First, the petitioner argues that trial counsel was ineffective for failing to properly investigate the validity of his prior convictions before he was sentenced. Specifically, he contends that counsel was deficient for not investigating his prior felony convictions and in failing to object to their use to enhance his sentence. The post-conviction court found that the petitioner had seven prior felony convictions and that he had attacked his prior convictions in two prior habeas corpus petitions. The post-conviction court specifically held that the petitioner failed to demonstrate that counsel was deficient or that he was prejudiced with regard to the sentencing proceedings. The record reflects that certified copies of the judgment and the presentence report were introduced as exhibits during the sentencing hearing. The post-conviction court held that the judgments did not reveal any illegality and that the sentences had already been served by the petitioner. The post-conviction court cited State v. McClintock, 732 S.W.2d 268 (Tenn. 1987), stating that "courts have

---

[47]    Pet. for Post-Conviction Relief, Wilson v. State, No. 04 01773 (Shelby Cnty. Crim. Ct.), ECF No. 18-14 at PageID 657.

[48]    Appellant's Br. 1, 8-40, Wilson v. State, No. W2009-00173-CCA-R3-PC (Shelby Cnty. Crim. Ct.), ECF No. 18-22 at PageID 1509, 1516-47.

consistently held that a defendant may not attack a facially valid prior conviction in a subsequent proceeding in which the prior conviction is used to enhance punishment." The petitioner's sentences had already expired and were no longer subject to collateral attack because the time for filing a post-conviction petition for those convictions had already passed. The petitioner has already received habeas corpus review of those prior convictions, and the habeas court found that the judgments were not void.

During the post-conviction hearing, counsel testified that the petitioner never told her that there was anything wrong with his prior convictions and did not allege that the judgments were void. She also testified that the judgments did not appear to be void. The petitioner has not met his burden of demonstrating either that counsel was deficient or that he was prejudiced by her representation.

Wilson v. State, 2010 WL 2384895, at *2, *4.

Wilson has failed to show that the decision of the Tennessee Court of Criminal Appeals on this issue was contrary to, or an unreasonable application of, clearly established federal law or that it was based on an unreasonable factual determination. The Petition does not argue that Wilson was prejudiced by his attorney's failure to examine the prior convictions. (*See* ECF No. 1 at 30.) Wilson has cited no authority for the proposition that a trial court in Tennessee is authorized to disregard or invalidate prior convictions offered to enhance an offender's sentence when the offender has failed to challenge those convictions on direct appeal or through a timely post-conviction or habeas petition. This aspect of the fourth issue is without merit.

The fourth issue is without merit and is DISMISSED.

**E.   Counsel's Failure to Make a Written Request for a Lesser-Included Offense Instruction (Claim 5)**

In his fifth issue, Wilson argues that his attorney was ineffective in failing to request in writing that aggravated assault be charged as a lesser-included-offense of aggravated robbery. (ECF No. 1 at 20, 31.)

Wilson raised this issue in his amended post-conviction petition[49] and on the post-conviction appeal.[50] The Tennessee Court of Criminal Appeals denied relief on the merits, stating as follows:

> During the hearing on the petition for post-conviction relief, the petitioner's trial counsel testified that she did not make a written motion to have aggravated assault included as a lesser included offense of aggravated robbery because she did not think it was a lesser included offense at the time. She acknowledged that she did not make a strategic decision to exclude aggravated assault.
>
> . . . .
>
> Next, the petitioner argues that counsel was ineffective for failing to secure a jury instruction on the lesser included offense of aggravated assault. The jury was instructed on the lesser included offenses of robbery and misdemeanor theft, and the post-conviction court found that counsel should have requested an instruction for inclusion of an instruction for aggravated assault because it was a lesser included offense. However, the post-conviction court determined that the petitioner failed to establish that he was prejudiced because the failure to instruct the jury on

---

[49]   Am. Pet. for Post-Conviction Relief, <u>Wilson v. State</u>, No. 04 01773 (Shelby Cnty. Crim. Ct.), ECF No. 18-14 at PageID 680.

[50]   Appellant's Br. 1, 51-56, <u>Wilson v. State</u>, No. W2009-00173-CCA-R3-PC (Shelby Cnty. Crim. Ct.), ECF No. 18-22 at PageID 1509, 1558-63.

aggravated assault did not affect the outcome of the trial.

The record reflects that counsel failed to request a jury instruction for aggravated assault because she did not think it was a lesser included offense of aggravated robbery at the time of trial. This court has previously held that aggravated assault is a lesser included offense of aggravated robbery in State v. James Eric Alder, No. M1999-02544-CCA-R3-CD, 2000 Tenn. Crim. App. LEXIS 843, at *7, 2000 WL 1606588 (Tenn. Crim. App. at Nashville Oct. 27, 2000). However, we conclude that the petitioner has failed to establish that he was prejudiced by the lack of an instruction. The evidence at trial established that the petitioner was guilty of aggravated robbery. He held a store clerk at gunpoint and told him, "Don't make me shoot you" and "Give me all the money." The victim gave the petitioner the money in the cash register. In light of the evidence presented at trial, it is unlikely that the outcome would have been different with an instruction on the lesser included offense of aggravated assault. Even though it was given instructions on other lesser included offenses, the jury convicted the petitioner of the greatest offense charged. The petitioner is not entitled to relief on this issue. We conclude that the record supports the post-conviction court's dismissal of the petition for post-conviction relief.

Wilson v. State, 2010 WL 2384895, at *1, *4.

Wilson has failed to establish that the decision of the Tennessee Court of Criminal Appeals was contrary to, or an unreasonable application of, Strickland v. Washington, or that it was based on an objectively unreasonable factual determination. Wilson was convicted of aggravated robbery, which is defined as robbery "[a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon . . . ." Tenn. Code Ann. § 39-13-402(a)(1). "Robbery is the intentional or knowing theft of property

from the person of another by violence or by putting the person in fear." Tenn. Code Ann. § 39-13-401(a).

Under Tennessee law, aggravated assault is a lesser-included-offense of aggravated robbery because "all of its statutory elements are included with the statutory elements of the offense charged." State v. Burns, 6 S.W. 3d 453, 466 (Tenn. 1999). As the Tennessee Court of Appeals has explained:

> A person commits assault when he "intentionally or knowingly causes another to reasonably fear imminent bodily injury." Tenn. Code Ann. § 39-13-101(a)(2)(1997). Additionally, a person commits aggravated assault by intentionally or knowingly committing an assault by using or displaying a deadly weapon. Tenn. Code Ann. § 39-13-102(a)(1)(B)(1997). As this court has previously found,
>
> > the offense of aggravated robbery requires proof of a theft of property, whereas aggravated assault does not. However, the offense of aggravated assault by causing another to reasonably fear imminent bodily injury by the use of a deadly weapon does not require proof of any additional element distinct from the elements of aggravated robbery accomplished with a deadly weapon.
>
> State v. Gray, No. 02C01-9707-CC-00270, 1998 WL 211791, at *2-3 (Tenn. Crim. App. at Jackson, May 1, 1998). Therefore, applying part (a) of the Burns test, both assault and aggravated assault are lesser-included offenses of aggravated robbery.

State v. Alder, No. M1999-02544-CCA-R3-CD, 2000 WL 1606588, at *2 (Tenn. Crim. App. Oct. 27, 2000).

To convict Wilson of aggravated assault, the jury would have to conclude that Wilson displayed a deadly weapon — contrary to his position at trial and in his statement to the police — and also conclude that Wilson did not commit a theft of property, despite

his admission that he did.[51] In light of the uncontradicted evidence that Wilson committed a theft of property, he cannot establish that he was prejudiced by the trial court's failure to instruct the jury on aggravated assault.

This conclusion is reinforced by the fact that the trial judge instructed the jury on the lesser included offenses of robbery and theft of property,[52] yet the jury convicted Wilson of the most serious offense that was charged. Wilson v. State, 2010 WL 2384895, at *4.

The fifth issue is without merit and is DISMISSED.

### F.   Counsel's Alleged Failure to Investigate and Prepare for Trial (Claim 6)

In his sixth issue, Petitioner asserts that his attorney rendered ineffective assistance by failing to investigate the case and prepare for trial. (ECF No. 1 at 20, 29-30.) The factual basis for Claim 6 appears to be similar to that for Claims 2, 4, and 5. The sixth issue is without merit for the reasons previously stated and is, therefore, DISMISSED.

Because every claim asserted by Petitioner is without merit, the Court DENIES the Petition. The Petition is DISMISSED WITH PREJUDICE. Judgment shall be entered for Respondent.

---

[51]     Trial Tr. 97, State v. Wilson, No. 04 01773 (Shelby Cnty. Crim. Ct.), ECF No. 18-3 at PageID 372 ("I took some money. It looked like about $35 and some ones.").

[52]     Jury Instructions, id., ECF No. 18-6 at PageID 492-93.

V.        **APPEAL ISSUES**

There is no absolute entitlement to appeal a district court's denial of a § 2254 petition. <u>Miller-El v. Cockrell</u>, 537 U.S. at 335, 123 S. Ct. at 1039; <u>Bradley v. Birkett</u>, 156 F. App'x 771, 772 (6th Cir. 2005). The Court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to a § 2254 petitioner. Rule 11, § 2254 Rules. A petitioner may not take an appeal unless a circuit or district judge issues a COA. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1).

A COA may issue only if the petitioner has made a substantial showing of the denial of a constitutional right, and the COA must indicate the specific issue or issues that satisfy the required showing. 28 U.S.C. §§ 2253(c)(2) & (3). A "substantial showing" is made when the petitioner demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." <u>Miller-El</u>, 537 U.S. at 336, 123 S. Ct. at 1039; *see also* <u>Henley v. Bell</u>, 308 F. App'x 989, 990 (6th Cir. 2009) (per curiam) (same). A COA does not require a showing that the appeal will succeed. <u>Miller-El</u>, 537 U.S. at 337, 123 S. Ct. at 1039; <u>Caldwell v. Lewis</u>, 414 F. App'x 809, 814-15 (6th Cir. 2011). Courts should not issue a COA as a matter of course. <u>Bradley</u>, 156 F. App'x at 773.

In this case, there can be no question that Petitioner's claims are meritless for the reasons previously stated. Because any appeal by Petitioner on the issues raised in this petition does not deserve attention, the Court DENIES a certificate of appealability.

Rule 24(a)(1) of the Federal Rules of Appellate Procedure provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. However, if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal *in forma pauperis*, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court. *See* Fed. R. App. P. 24(a)(4)-(5). In this case, for the same reasons the Court denies a certificate of appealability, the Court determines that any appeal would not be taken in good faith. It is therefore CERTIFIED, pursuant to Federal Rule of Appellate Procedure 24(a), that any appeal in this matter would not be taken in good faith. Leave to appeal *in forma pauperis* is DENIED.[53]

IT IS SO ORDERED this 10th day of September, 2013.


**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

---

[53]    If Petitioner files a notice of appeal, he must pay the full $455 appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within thirty (30) days of the date of entry of this order. *See* Fed. R. App. P. 24(a)(5).

48